**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

**JUN 6 2001**

TENTH CIRCUIT

**PATRICK FISHER**
**Clerk**

_____

ROGER DUANE PFEIL,

    Petitioner-Appellant,

v.

VANCE EVERETT, Warden,
Wyoming State Penitentiary;
WYOMING ATTORNEY GENERAL,

    Respondent-Appellee.

No. 01-8003
(D. Wyo.)
(D.Ct. No. 00-CV-93-B)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **SEYMOUR**, **McKAY**, and **BRORBY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Roger Duane Pfeil, a state inmate appearing *pro se*, appeals the district court's decision denying his federal habeas corpus petition filed pursuant to 28 U.S.C. § 2254 as untimely filed. We deny Mr. Pfeil a certificate of appealability[1] and dismiss his appeal.

Following his guilty plea, the State of Wyoming convicted Mr. Pfeil of second degree murder and sentenced him to twenty-five to forty-five years imprisonment on July 28, 1997. Mr. Pfeil did not file a direct appeal. Mr Pfeil also did not file any state post-conviction or other pleading until November 18, 1998 when he filed a motion to withdraw his guilty plea. The state district court denied his motion and Mr. Pfeil appealed to the Wyoming Supreme Court which denied *certiorari*; the United States Supreme Court also denied *certiorari*. On August 2, 1999, Mr. Pfeil filed a state habeas corpus which he also unsuccessfully litigated thorough the state courts until the Supreme Court ultimately denied *certiorari*. Finally, on May 9, 2000, Mr. Pfeil filed his federal habeas corpus petition under § 2254 alleging multiple errors in his conviction and sentencing.

---

[1] The district court made no ruling on Mr. Pfeil's request for a certificate of appealability. Under our Emergency General Order of October 1, 1996, we deem the district court's failure to issue a certificate of appealability within thirty days after filing the notice of appeal as a denial of his certificate. Mr. Pfeil renewed his request for a certificate of appealability on appeal.

The federal district court referred Mr. Pfeil's petition to a magistrate judge who issued a report and recommendation. The magistrate judge recommended denying Mr. Pfeil's petition as untimely filed. The magistrate judge determined Mr. Pfeil's conviction became final on August 27, 1997, because he had thirty days after his July 28, 1997 sentence to file a direct appeal to the Wyoming Supreme Court. The magistrate judge also determined that because Mr. Pfeil did not file a direct appeal, the ninety-day period for filing an appeal to the United States Supreme Court did not apply in determining the date his conviction became final. As such, the magistrate judge determined the one-year limitation period for filing a federal habeas petition ended August 27, 1998, and that none of the state post-conviction pleadings tolled the one-year limitation period because Mr. Pfeil did not file them until after this limitation period expired.

The magistrate judge also rejected Mr. Pfeil's request for equitable tolling, in which he alleged he experienced a prison lockdown at the beginning of sentence, from August to December 1997, and could not conduct legal research for the purpose of filing for state post-conviction relief. The magistrate judge determined Mr. Pfeil had at least eight months after the lockdown to diligently pursue his claims and failed to allege with sufficient specificity how he was denied "a lack of access and the steps he took to diligently pursue his federal

claims."

Mr. Pfeil timely filed objections to the magistrate judge's report and recommendation, claiming in part that equitable tolling should apply because he was in a total lockdown in the West Unit section of the prison until late December 1997, during which time: 1) he was allowed only an hour out of his cell per day, and 2) he could not speak to other inmates to learn "what [remedies were] available" or how to order legal books. After the cells were unlocked, he claimed he was repeatedly denied "kite" or "kiting" requests or orders for legal books from the law library for the period from November 11, 1997 until his transfer to the East Unit section of the prison on March 25, 1998.

In his objections, Mr. Pfeil pointed out that from March 25 until October 1998, he "was in the East Unit which was open and had normal access to the law library for research except under certain instances." However, despite being in the open prison section, Mr. Pfeil contended he was denied library access because he was required to work at the prison auto shop or else face return to the lockdown section, disciplinary actions, or decreased parole possibilities. Mr. Pfeil further pointed out he could not access the law library at night due to its 6:00 p.m. closure, wrote multiple "kites" requesting it be opened on weekends

-4-

and nights, and tried to leave work early or get other inmates to obtain books for him. He explained he eventually obtained a book on post conviction remedies called "Post-Conviction Remedies; a Self Help Manual by Manville and Brezna," but had difficulty understanding what remedies were available. Finally, he alleged that in October 1998 he finally gained access to the prison law library because his boss was on a hunting trip, and mailed his motion to withdraw his guilty plea on November 13, 1998.

After reviewing Mr. Pfeil's objections thereto, the district court issued an order adopting the magistrate judge's report and recommendation and denying Mr. Pfeil's petition. In so doing, the district court found Mr. Pfeil's petition untimely and rejected Mr. Pfeil's argument that equitable tolling should apply. The district court reasoned that the prison lockdown Mr. Pfeil experienced only lasted until December 1997 and his inability to obtain certain requested legal materials lasted only from November to December 1997 when the lockdown was lifted. The district court reasoned that Mr. Pfeil was not prevented from diligently pursuing his claims within the one-year limitation period after December of 1997, but did not explicitly address Mr. Pfeil's contentions concerning his access to legal materials from March to October 1998, while in the prison's open section.

On appeal, Mr. Pfeil raises multiple issues claiming the district court erred in not tolling the one-year limitation period. Specifically, Mr. Pfeil complains the district court erred in: 1) not tolling the limitation period during the lockdown period and later due to his work schedule; 2) not applying either mandatory or discretionary tolling because of the court's misinterpretation of the standards set forth in § 2244(d)(1)(B); 3) not tolling for "time periods between pending timely filed state post conviction or other collateral proceedings" or the periods his post-conviction proceedings were appealed to the United States Supreme Court; 4) violating the Suspension Clause of the Constitution by not applying either mandatory or discretionary tolling; 5) not considering the actual innocence or miscarriage of justice exception to the one-year statute of limitations; and 6) not finding a jurisdictional defect exception to the one-year limitation period. Among other things, Mr. Pfeil also alleges the district court erred in dismissing his petition with prejudice, and not granting his motion to disqualify the state and strike its response to his petition due to its "improper conduct and constitutional conflict." Mr. Pfeil also sets forth numerous grounds in support of his petition on the merits.

"In reviewing the denial of a habeas corpus petition, we review the district court's factual findings under a clearly erroneous standard." *Rogers v. Gibson*,

173 F.3d 1278, 1282 (10th Cir. 1999), *cert. denied*, 528 U.S. 1120 (2000). We review *de novo* both the district court's interpretation of § 2244(d), *see United States v. Fillman*, 162 F.3d 1055, 1056 (10th Cir. 1998), and its legal basis for dismissal of Mr. Pfeil's habeas corpus petition. *Rogers*, 173 F.3d at 1282.

Applying this standard of review, and after a careful review of the record, we conclude, for substantially the same reasons as the district court, that Mr. Pfeil did not file a timely petition. First, as the district court determined, Mr. Pfeil's direct appeal and his judgment and sentence became final August 27, 1997. Because Mr. Pfeil did not file a direct appeal to the Wyoming Supreme Court, the ninety-day time period for appeals to the United States Supreme Court did not extend the date that his judgment and sentence became final. *See* United States Supreme Court Rule 13 (stating ninety-day period applies only to decisions from the state court of last resort); *cf. Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999) (holding ninety-day period applies following a direct appeal of the conviction), *cert. denied*, 528 U.S. 1084 (2000). Thus, the one-year statute of limitations began August 27, 1997 and expired August 26, 1998. *See* 28 U.S.C. § 2244(d)(1); *Hoggro v. Boone*, 150 F.3d 1223, 1225 (10th Cir. 1998). In addition, even if Mr. Pfeil's motion to withdraw his guilty plea is considered a post-conviction or collateral attack under § 2244(d)(2), neither it nor his later

state habeas action were filed during the pendency of the one-year limitation period. Therefore, no mandatory tolling occurred. *Barnett v. LeMaster*, 167 F.3d 1321, 1322-23 (10th Cir. 1999). Furthermore, the period in which Mr. Pfeil filed his petition for certiorari in his post-conviction actions with the Supreme Court does not apply for tolling purposes. *See Rhine*, 182 F.3d at 1155-56.

As to Mr. Pfeil's contention equitable tolling should apply, we recognize the one-year statute of limitations may be equitably tolled, but only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 121 S. Ct. 1195 (2001). In this case, the issue is whether Mr. Pfeil's alleged limited access to the prison law library denied him "meaningful access to the courts" which posed an extraordinary circumstance sufficient to equitably toll the limitation period. We recognize the right to access the courts is protected from state prison officials actively interfering with an inmate's attempt to prepare or file legal documents. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). The Supreme Court has recognized that prison law libraries and legal assistance programs are one means of ensuring the right of access, but that an inmate must demonstrate the alleged shortcomings in the library or legal assistance program hindered his effort to

pursue a legal claim. *Id.* at 351. As such, inmates must show they diligently pursued their claims. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.), *cert. denied*, 525 U.S. 891 (1998). Inmates are not guaranteed the "wherewithal to transform themselves into litigating engines" but only the tools "inmates need in order to attack their sentences, directly or collaterally." *Lewis*, 518 at 355. "[T]he Constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts – a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360.

With this in mind, we begin with the lockdown Mr. Pfeil experienced. We agree with the district court that Mr. Pfeil experienced a prison lockdown for only a short period of the one-year limitation period. In addition, we agree with the district court that Mr. Pfeil's allegation he requested and was denied certain legal materials for a few months during his stay in the West Unit is insufficient to toll the limitation period or show a limitation in diligently pursuing his claims, given: 1) he was later released into the prison's open section for several months during the limitation period and 2) he admitted this section "had normal access to the law library for research except under certain instances." Mr. Pfeil's complaint that he did not understand what remedies were available to him during this time or that

he lacked adequate legal training are also insufficient to warrant the special consideration required for equitable tolling. *See Marsh,* 223 F.3d at 1220.

In addition, the Supreme Court has recognized lockdowns routinely cause delays in receiving legal materials, but also ruled that "so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury." *Lewis,* 518 U.S. at 362; *see also Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir.) (analyzing lockdown as an impediment under § 2244(d)(1)(B), rather than under an equitable tolling theory, and concluding a lockdown may be an impediment affecting the date a conviction becomes final, but that petitioner has the burden of showing the lockdown was not "reasonably related to legitimate penological interests."), *cert. denied*, 121 S. Ct. 410 (2000); *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998) (holding in 42 U.S.C. § 1983 suit that "[l]imitations may be placed on library access so long as the regulations are 'reasonably related to legitimate penological interests.'"). In this case, even if we consider Mr. Pfeil's lockdown argument as one claiming an impediment under § 2244(d)(1)(B) extending the date his conviction became final, Mr. Pfeil has not presented any evidence the lockdown was not related to legitimate penological interests. *See Akins*, 204 F.3d at 1090.

We next address the period Mr. Pfeil spent in the prison's open section or East Unit during the remaining months of the limitation period. Mr. Pfeil raises a serious charge that he was denied access to a law library or legal materials during the months he was in the prison's open section, thereby foreclosing any opportunity to research his claims. While the open section provided general library access, Mr. Pfeil nevertheless contends he was denied access because he was required to work during the only time the library was open, and that after 6:00 p.m., the library was closed. However, Mr. Pfeil does not explain how early the library opened, precisely what the library hours were in comparison to his work hours, or how many hours and days he was required to work. He also does not indicate whether he had free time or lunch privileges during which he could access the library, whether he asked to transfer to a job with hours more conducive to library access, or whether he continued to request, but was denied, legal books through the process he calls "kiting."

Moreover, Mr. Pfeil admitted he received a book on seeking post-conviction remedies while he was in the open section of the prison. This shows access to at least some legal resource intended to aid him in presenting his grievances to the courts. *Lewis*, 518 at 360. The fact Mr. Pfeil did not fully comprehend the remedies available to him after receiving this book is not

sufficient to show the extraordinary circumstances necessary for equitable tolling. Rather, "it is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" *Marsh*, 223 F.3d at 1120 (quotation marks and citation omitted).

Finally, while prisoners have the burden of demonstrating the library or legal assistance program at their prison hindered their efforts to pursue a legal claim, *Lewis*, 518 U.S. at 351, Mr. Pfeil has furnished only his own self-serving declarations supporting his allegations. Under these circumstances, we cannot say Mr. Pfeil has shown with sufficient particularity the extraordinary circumstances required to toll the limitation period. While the district court did not explicitly address Mr. Pfeil's library access argument relating to the period between March 1998 to October 1998, we conclude that under the circumstances the district court did not err in holding that equitable tolling was not warranted.

As to Mr. Pfeil's contention that the district court erred because it did not consider the actual innocence or miscarriage of justice exception to the one-year statute of limitations, we find it harmless under the circumstances. The record shows Mr. Pfeil summarily made two self-serving assertions of innocence, which

we conclude are insufficient to make a colorable showing of innocence.[2]

As to Mr. Pfeil's additional contentions, we conclude the district court did not misinterpret the standards set forth in § 2244(d)(1)(B), violate the Suspension Clause of the Constitution by not applying either mandatory or discretionary tolling, nor err in not finding a "jurisdictional defect exception" to the one-year limitation period. These claims simply lack merit under the circumstances of this case, and need no further discussion or analysis. We also hold that the district court did not err in dismissing Mr. Pfeil's petition with prejudice because, as we have recognized, it was untimely filed. We also review for abuse of discretion Mr. Pfeil's motion to disqualify the state and strike its response to his petition due to its "improper conduct and constitutional conflict." *See McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991). After a review of the record, we conclude the district court did not abuse its discretion in dismissing Mr. Pfeil's motion to disqualify the state and strike its response to his habeas petition. Finally, given our conclusion Mr. Pfeil untimely filed his § 2254 petition, we need not address the merits of his petition.

---

[2] In addition, some of Mr. Pfeil's citations to the record in support of his innocence assertion relate instead to his argument his guilty plea was not knowing, intelligent, informed or voluntary.

In order for this court to grant a certificate of appealability, Mr. Pfeil must make a substantial showing of a denial of a constitutional right under 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition on procedrual grounds, as it did here, without reaching the underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in it procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Under the circumstances presented, Mr. Pfeil has not shown the district court's procedural ruling is debatably in error.

Accordingly, we **DISMISS** Mr. Pfeil's appeal. We further deny Mr. Pfeil's request to proceed in forma pauperis, and for failure to show cause and **DISMISS** his "Motion to Strike State's Opposition, Stay Proceedings for Determination of Question and Request for Consideration of Sanctions."

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-14-